IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

MILTON JACOBS,

        Plaintiff,

v.                                      CIVIL CASE NO. 2:12-cv-508

CAROLYN W. COLVIN,
Acting Commissioner of Social Security
Administration,
        Defendant.

## OPINION AND ORDER

This matter comes before the Court on Carolyn W. Colvin, Acting Commissioner of the Social Security Administration's ("Defendant" or "Commissioner") objections to the Report and Recommendation of the Magistrate Judge. Doc. 17. For the reasons explained below, the Court **OVERRULES** Defendant's objections, Doc. 17, and **ADOPTS** the Magistrate Judge's Report & Recommendation. Doc. 16 (or "R&R").

## I. BACKGROUND[1]

### A. Procedural History

Defendant does not object to the recitation of the procedural and factual background of this case contained in the R&R, which sets forth, inter alia, the following facts. Plaintiff Milton Jacobs ("Plaintiff" or "Jacobs") is forty-eight (48) years old and has not been engaged in substantial gainful activity since December 27, 2006, when he left his employment at Dollar Financial group due to his alleged disability. R&R at 2. Jacobs filed an application for disability on July 15, 2009. Id. The

---

[1] This background does not reflect the complete procedural and factual history, but only those proceedings and facts relevant to the present objections. The Court accepts as fact the procedural history and factual background set forth by the Magistrate Judge in the R&R, insofar as they are not objected to by Colvin.

1

Commissioner denied his application initially, and upon reconsideration. Id. Jacobs requested an administrative hearing that was conducted on May 17, 2011. Id. Administrative Law Judge ("ALJ") William T. Vest, Jr. concluded that Jacobs was not disabled within the meaning of the Social Security Act and denied his claim for disability benefits. The Appeals Council denied review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. Id.

Jacobs timely filed the instant action for judicial review on September 13, 2012. Doc. 1. On September 14, 2013 the instant action was designated to a Magistrate Judge for report and recommendation. Doc. 7. In accordance with a court order issued by the Magistrate Judge on December 14, 2012, Jacobs filed a motion for summary judgment on January 16, 2013, Doc. 9, and the Commissioner filed a cross-motion for summary judgment on February 13, 2013. Doc. 11. On July 25, 2013, the Magistrate Judge issued the R&R, Doc. 16, recommending that the Court vacate the final decision of the Commissioner and remand the matter for further review. R&R at 1. On August 12, 2013, the Commissioner timely filed her objections to the R&R, Doc. 17, and on August 12, 2013, Jacobs filed his response. Doc. 18.

## B. Factual Background

### 1.    Jacobs' Condition[2]

Jacobs is a veteran of the United States military.  He was born on September 4, 1965, is 5'6", and weighs 268 pounds. R&R at 2. During his service, Jacobs sustained bilateral stress fractures in his lower extremities and was treated for a right knee injury; he was subsequently diagnosed with degenerative joint disease of the knees. R. at 385–86. Jacobs has also consistently received treatment for medical obesity, hypertension, migraines, hyperlipidemia, and obstructive sleep apnea, all of which Jacobs claims, provide grounds for his inability to work. R. at 42, 61.

In 2006, Jacobs initially reported having trouble performing his job as a branch manager. R. at 41. He received continuous treatments for his medical conditions at the VA Medical Center in

---

[2] As Jacobs' condition is not in dispute, this Court only provides an overview of the relevant facts.

Hampton ("VAMC") under Dr. Richard T. Deaton.  In September 2006, Dr. Kay S. Reid performed a Compensation and Pension Examination on Jacobs to determine if he had any disabilities and, if so, to what extent they were connected to his service.  R&R at 3.  The exam revealed that Jacobs had bilateral leg and knee pain, but he had a normal gait.  Id. Dr. Reid determined that he could only stand for fifteen to thirty minutes at a time and could only walk .25 to one mile before needing to rest.  Id.  However, the condition created only mild effects on chores, shopping, exercise and recreation, and traveling.  Id.

Dr. Reid also examined Jacobs for hypertension and migraines. Jacobs' hypertension had worsened over time, but he had a regular heart rhythm and no serious heart-related diseases; thus, Dr. Reid concluded that Jacobs' medical conditions could be controlled with medication. R. at 206–07. Additionally, Jacobs reported that he suffered migraine headaches about once every two months; however, Dr. Reid found that the migraines were not prostrating and that ordinary activity was possible. R. at 208.

Dr. Reid concluded from the exam that Jacobs' degenerative joint disease and hypertension were related to his military service, while his migraine headaches were not. R. at 220–23.  At some point, the VA determined Jacobs' service-related impairments made him 60% disabled, but nevertheless compensated him at the 100% rate, as the VA concluded he was "totally and permanently disabled due to [his] service-connected disabilities." R. at 384.

Through 2008 and 2009, Jacobs continued medical treatment under Dr. Deaton and a medical specialist after complaining of migraine headaches.  See R&R 5–6. After several visits, Jacobs was prescribed medication that lowered the frequency of his migraines.  His hypertension remained well-controlled with his current medications.  Id.

In July 2009, Dr. Deaton signed a DMV Certificate of Disability affirming that Jacobs

3

was disabled. R. at 103. Dr. Deaton indicated that Jacobs suffered from degenerative joint disease and as a result, could not walk 200 feet without stopping to rest, nor walk without the use of an assistive device. Id. On February 17, 2010, Dr. Peter Birk, a physician retained by the Agency, examined Jacobs and reported that due to degenerative arthritis of his knees, Jacobs could not stoop or bend and could only walk 100 yards before resting. R. at 355–58. However, Dr. Birk found no issues with his peripheral joints, and noted that Jacobs did not use a walking stick or other assistive device, yet his gait was normal. Id. Additionally, Dr. Birk found no evidence of hypertensive impairment or motor function disorganization. Id. Dr. Birk concluded that Jacobs had osteoarthritis of the knees but was unsure as to any other medical problems. Id.

A week later, Dr. Richard Surrusco, a state agency physician, reviewed Jacobs' records at the application level and completed a Physical Residual Functional Capacity Assessment. R. at 65-66. Dr. Surrusco opined that Jacobs was capable of performing work that required him to remain sitting for no more than six hours in an eight hour work day, and that he was capable of occasionally lifting and/or carrying items weighing no more than twenty pounds and standing and/or walking for no more than four hours a day. Id. The doctor concluded that Jacobs' exertional limitations were due to his bilateral knee arthritis and obesity, but found Jacobs' statements concerning the severity of the limiting effects unsupported by objective medical evidence. Id.

Jacobs continued treatment with Dr. Deaton at the VAMC in March 2010 complaining of knee pain, low back pain and migraine headaches, though he noted the migraines had become less severe. R. at 363. Dr. Deaton ordered several tests including a plain film of both knees and lumbosacral spine, an orthopaedic consultation for Jacobs' knees, and a MRI of the lumbosacral spine. Id. Film of Jacobs' knees revealed minor degenerative changes since 2006 with no definitive joint space narrowing. R. at 362. The knees aligned within the normal limits and there were no acute findings. Id. The film of the lumbosacral spine revealed abnormality of the L5 vertebra, but the alignment of the vertebrae appeared otherwise normal. R. at 361. The MRI of the lumbar spine

4

revealed no significant spinal or foraminal stenosis. R. at 360. Jacobs also had a CT scan of his head that revealed no significant abnormality. R. at 359.

After these tests were concluded Dr. Robert Castle, a state agency physician, reviewed Jacobs' records at the reconsideration level and completed a Physical Residual Functional Capacity Assessment. R. at 76-77. Dr. Castle's findings were identical to Dr. Surrusco's prior findings. Id.

Jacobs continued to receive medical treatment under Dr. Deaton.  On April 4, 2011, Dr. Deaton completed his own Physical Residual Functional Capacity Evaluation. R. at 379-83. He cited Jacobs' impairment as degenerative joint disease in both knees with continual pain which had lasted or could be expected to last at least twelve months. Dr. Deaton found that Jacobs' condition meant that he could not walk or stand for more than fifteen minutes or sit for more than thirty minutes at a time. R. at 380–81. Dr. Deaton noted that, according to Jacobs, the anti-inflammatory drugs had not helped, and Jacobs' pain level reports had remained constant since October 2010. R. at 379.  He further found Jacobs could lift ten pounds and perform some postural activities, but that Jacobs could never twist, stoop, crouch, or climb ladders or stairs. R. at 380–82.  Dr. Deaton further opined that Jacobs' pain would result in "all bad days," frequent interruptions, and an inability to work at all on some days. R. at 382–88. He stated that Jacobs' pain constantly interferes with the attention and concentration needed to perform even simple work tasks, and as a result he was incapable of performing even "low stress" jobs. R. at 380. Dr. Deaton did note, however, that Jacobs' complaints of pain were not the result of an objective physical condition. R. at 383.

3.     *The Administrative Hearing*

At the hearing on May 17, 2011, Jacobs testified that he was disabled due to his service-related conditions, as well as depression.[3] He claimed that he could not stand or walk for more than

---

[3] Despite his claim, Jacobs has had no ongoing treatment for depression from a medical healthcare provider, and has not been diagnosed with depression. Ex. 6F, 1F-8F.

ten to fifteen minutes a day, and that he continued to have trouble concentrating and interacting with others. R at 45–47, 51. He also testified that he left his employment in December of 2006 because it required too much standing, and he could not continue to self-medicate with Motrin. R. at 55. Jacobs maintained that his daily routine was highly limited and consists of sitting on his couch and only leaving home when necessary. R. at 48–49, 51. In contrast to Jacobs' own testimony, a vocational expert also provided testimony as to Jacobs' condition. The expert testified that Jacobs' prior employment as a booking agent and a financial branch manager were skilled, sedentary positions. R. at 54–55. He hypothesized that Jacobs could perform both jobs, as well as other similar jobs even with his limitations. R. at 56.

### 4. The ALJ's Determination

In evaluating whether Jacobs was entitled to disability benefits, the ALJ followed the five-step sequential evaluation of disability set forth in the Social Security regulations. The evaluation requires the ALJ to determine whether Jacobs: (1) is engaged in a substantial gainful activity; (2) has a severe impairment, (3) has an impairment that equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment that prevents past relevant work based on his residual functional capacity, and (5) has an impairment that prevents him from any substantial gainful employment. 20 C.F.R. § 404.1520; § 416.920.

The ALJ first found that Jacobs had not engaged in substantial gainful activity since his alleged disability onset date, December 27, 2006, and, therefore, met step one of the sequential evaluation process. R at 16–22. At steps two and three, the ALJ found that Jacobs had severe impairments of osteoarthritis of the knees and obesity, but that those impairments did not meet or equal in severity any of the Listings of Impairments in 20 C.F.R. pt. 404, Subpt. p. Id. The ALJ also found under step four that Jacobs had the physical requisite functional capacity to perform light work, with limitations, and thus could perform his past relevant work as a financial branch manager.

6

R at 16–22. As Jacobs did not meet the preceding criteria for disability, the ALJ did not continue to the fifth prong of the analysis.

The ALJ then wrote four paragraphs detailing his explanation for rejecting the VA's determination as "extreme in light of the claimant's presentation at the hearing, . . . [his] activities of daily living, . . . [his] overall treatment history, and the objective medical signs and findings," including those in Dr. Deaton's own records. R. at 19. First, the ALJ noted that Jacobs was "well-spoken, in no distress, and could walk" without assistance during his hearing. Id. Furthermore, Jacobs' own testimony concerning his daily activities—including shopping, driving, and watching television—conflicted with Dr. Deaton's own assessment of Jacobs' limitations. Id.

Next, ALJ considered the medical evidence upon which Jacobs' claim of disability was predicated. Specifically, the ALJ focused upon the various tests and scans Jacobs had undergone, which, with few exceptions, came back "normal." R. at 19–20. Furthermore, the ALJ summarized Jacobs' treatments as "conservative" and "consisting primarily of medication" that controlled several of his most limiting impairments. Id. As much of Jacobs' claims of pain and impairment were unsubstantiated by medical evidence, the ALJ rightfully made a credibility determination based on a consideration of the entire case file, R. at 18–19, and decided that Jacobs' claims of his limitations were only partially credible. R. at 18.

In conclusion and based upon the abridged summary of reasons stated above, the ALJ gave greater weight to State agency's assessments rather than Dr. Deaton's or the VA's determination. The ALJ found that Jacobs was capable of performing his past relevant work, and therefore, was not under a disability as defined in the Social Security Act. R. at 20, 22.

*5. The Magistrate Judge's Report and Recommendation*

The Magistrate Judge found that in light of the Fourth Circuit's decision in <u>Bird v.</u> <u>Commissioner of Social Securities</u>, 699 F.3d 337 (4th Cir. 2012), the ALJ did not adequately

consider the VA's prior finding that Jacobs was disabled. Accordingly, the Magistrate recommended remand so that the ALJ could apply the new standard. R&R at 14.

## II. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the Court reviews de novo any part of a Magistrate Judge's recommendation to which a party has properly objected. Fed. R. Civ. P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.

In exercising de novo review, the Court analyzes the Commissioner's final decision using the same standard as that used by the Magistrate Judge. Specifically, the Court's review of the Commissioner's decision is limited to determining whether that decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept to support a conclusion." Johnson, 434 F.3d at 653 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal quotation mark omitted). Courts have further explained that substantial evidence is less than a preponderance of evidence, but more than a mere scintilla of evidence. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Importantly, in reviewing the ALJ's decision the Court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Johnson, 434 F.3d at 653 (quoting Craig, 76 F.3d at 589) (internal quotation mark omitted) (second alteration in original). Thus, if the Court finds that there was substantial evidence to support the ALJ's factual findings, even if there was also evidence to support contrary findings, the ALJ's factual findings must be upheld.

## III. ANALYSIS

This case hinges upon whether the ALJ adequately evaluated the VA's disability rating in light of the Fourth Circuit's decision in Bird v. Commissioner of Social Securities, 699 F.3d 337

8

(4th Cir. 2012), even though that opinion had not yet been released. At the time of the hearing and under current law, an ALJ is required to consider decisions by other governmental agencies related to the claimant's disability. Although not binding, the regulations suggest that the ALJ should "explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases." Williams v. Astrue, 2012 WL 3240467, at *9 (E.D.N.C. Apr. 4, 2012)(unpublished). In this case, the ALJ's brief explanation was commensurate with the evidence in the record before him concerning the VA's determination, and Fourth Circuit precedent at the time. See Williams, 2012 WL 3240467 at *9; Barnett v. Astrue, 2012 WL 75046, at *16 (S.D. W. Va. Jan. 10, 2012) ("When comparing the standards for establishing disability promulgated by the SSA to the less exacting standards employed by the VA, the ALJ's decision to give 'little weight' to the VA's determination is entirely reasonable.").

However, after the hearing and the Appeals Council denied review, the Fourth Circuit decided and released their opinion in Bird v. Commissioner of Social Security, holding that the SSA must give "substantial weight" to a VA disability rating, or explicitly detail the reasons for not giving it such weight. 699 F.3d 337 at 343.   While acknowledging that the SSA and VA apply different standards, the Fourth Circuit noted that both agencies "serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability," and both require extensive medical documentation. Id. As a result, a disability rating by one of the two agencies is "highly relevant to the disability determination of the other." Id. The Court's opinion also recognized, however, that the "SSA employs its own standards for evaluating a claimant's alleged disability, and [] the effective date of coverage . . . under the two programs will likely vary." Id. Thus, even under the new rule announced in Bird, the SSA may give less weight to a VA rating "when the record before the ALJ clearly demonstrates that such a deviation is appropriate." Id.

Here, Defendant argues that this case should not be remanded and the ALJ's determination should stand because the Judge's analysis was consistent with Bird. Doc. 17 at 2. Defendant

supports this argument by pointing to the thorough analysis the ALJ conducted of Jacobs' medical records and the totality of the evidence presented, including four detailed paragraphs in which the ALJ explained his rejection of the VA's determination. Id. Indeed, the ALJ was provided with scant more than Jacobs' complaints of pain to substantiate the VA's determination of disability.[4] Contrary to Jacobs' claims, the ALJ found that Jacobs' own physical appearance and presentation at the hearing demonstrated that he was more capable than Dr. Deaton's assessment of his limitation. R. at 19. Dr. Deaton had reported that due to Jacobs' degenerative joint disease, he could not walk 200 feet without stopping to rest, nor walk without the use of an assistive device. R. at 103. However, the ALJ noted that Jacobs did not use any kind of assistance to walk to stand at the hearing. R. at 19.

Second, Jacobs' own testimony concerning his daily activities as well as the vocational expert's opinion conflicted with Dr. Deaton's predictions concerning what Jacobs would be able to do. Id. Jacobs stated that he was able watch television and left his home to run errands and go shopping. R. at 48–49, 51. However, this testimony contradicted Dr. Deaton's report that Jacobs could not sit for more than thirty minutes at a time. R. at 380–81. Furthermore, the vocational expert who testified also disagreed with Dr. Deaton's assessment that Jacobs was disabled, and opined that Jacobs would be able to perform a highly skilled, sedentary job. R. at 56.

Lastly, other state agency doctors like Dr. Birk, Dr. Castle, and Dr. Surrusco's opinions combined with the results from the tests that Jacobs underwent did not support Dr. Deaton's conclusion that Jacobs was disabled. R. at 59–83. While Jacobs complained that migraines impaired his ability to concentrate and function and that the pain from his other ailments would, in Dr. Deaton's words, cause him to have "all bad days," R. at 382–88, Dr. Reid found that the

---

[4] Jacobs submitted a two-page letter, along with a one page attachment, from the VA outlining his benefits and the related disabilities; however, the submitted documents did not evidence how the VA determined that Jacobs was disabled, nor did they provide supporting medical analysis. R. at 384–86.

migraines were not prostrating and that ordinary activity was possible. R. at 208. Dr. Surrusco also opined that Jacobs was capable of performing work. R. at 65–66.

Unsurprisingly, the Plaintiff argues that this case should be remanded, despite the ALJ's stated reasons for not affording the VA's determination more weight, due to the Fourth Circuit's holding in <u>Bird</u>. This Court agrees. Notwithstanding the ALJ's detailed analysis and explanation of his rejection of the VA's determination, it is unclear that the ALJ met the new <u>Bird</u> requirement that he provide explicit detail as to why he did not give the VA's disability rating "substantial weight." See 699 F.3d at 343. Indeed, the ALJ cited what is now outdated law as his reason for giving the VA's determination "little weight"—because he was not bound by the VA's determination. R. at 19. As such, this Court is unconvinced that the ALJ's decision was sufficiently in compliance with <u>Bird</u> to avoid remand.

## IV. CONCLUSION

This Court has carefully and independently reviewed the relevant record in this case and the objections to the Magistrate Judge's Report and Recommendation. For the reasons discussed above, the Court **OVERRULES** Commissioner/Defendant's objections, Doc. 17, and **ADOPTS** the Magistrate Judge's Report and Recommendation, Doc. 16, in its entirety. The Court **DENIES** Commissioner/Defendant's Motion for Summary Judgment, Doc. 11, **GRANTS** Plaintiff Jacobs' Motion for Summary Judgment, Doc. 9, and **AFFIRMS** the Recommendation of the Magistrate Judge that the final decision of the Commissioner be **REMANDED** for further proceedings.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

/s/
_____
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: October 18, 2013

11